**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RAHMIN HOLDEN,** | **CIVIL ACTION** |
|        **Petitioner,** | |
| **v.** | |
| **THERESA DELBASE,** | **NO.  18-68** |
| **THE DISTRICT ATTORNEY OF THE** | |
| **COUNTY OF PHILADELPHIA, and** | |
| **THE ATTORNEY GENERAL OF THE** | |
| **STATE OF PENNSYLVANIA,** | |
|        **Respondents.** | |

**DuBois, J.**                                                                                    **January 15, 2019**

## M E M O R A N D U M

### I.      INTRODUCTION[1]

     *Pro se* petitioner, Rahmin Holden, was sentenced to life imprisonment on July 14, 2009,

after he was found guilty by a jury of first degree murder, two counts of recklessly endangering

another person, conspiracy, possession of an instrument of crime, and carrying a firearm without

a license.  R. & R. 1.  The conviction results from a shooting on April 28, 2006, during which

eleven gunshots were fired into a car, four of which hit the victim, killing him.  *Id.*  Three

witnesses observed the shooting—two passengers in the car in which the victim was shot,

Rodney Smith and Ronnie Jackson, and one nearby bystander, Angelic Kirkman Smith.  *Id.* at

1–2.

     Petitioner filed Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Document

No. 1) on December 22, 2017, asserting claims of insufficiency of evidence, verdict against the

weight of the evidence, and ineffective assistance of collateral attack counsel (Document No. 1).

---

[1] The facts and procedural history of this case are set forth in detail in Judge Caracappa's Report and
Recommendation, dated September 28, 2018, which this Court approves and adopts with this Memorandum and
Order.  In this Memorandum, the Court recites only those facts necessary to explain its rulings on *pro se* petitioner's
objections.

This case was referred to United States Chief Magistrate Judge Linda K. Caracappa for a report and recommendation on January 19, 2018 (Document No. 3). Judge Caracappa recommended denial and dismissal of the petition in a Report and Recommendation dated September 28, 2018 (Document No. 11). On October 25, 2018, petitioner filed objections to that part of the Report and Recommendation addressing petitioner's ineffective assistance of counsel claims (Document No. 16). The Court overrules petitioner's objections and approves and adopts Judge Caracappa's Report and Recommendation. The Court writes at this time only to explain its rulings on *pro se* petitioner's objections.

## II. LEGAL STANDARD

Where a court refers a habeas petition to a magistrate judge, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . [and] the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C).

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a petition for habeas corpus may only be granted if the state court's adjudication of the claim resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). "Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence." *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. § 2254(b)(1)(A). When a claim has not been fairly presented to the state courts, but state procedural rules bar further relief in state courts, the claim "meets the technical requirements for exhaustion" but is considered procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). In such cases, federal habeas review is barred unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." *Id.* at 750.

## III.    DISCUSSION

*Pro se* petitioner objects to Judge Caracappa's recommendations regarding his claims of ineffective assistance of collateral attack counsel for failing to raise several ineffective assistance of trial counsel claims. Pet. Objs. 1–4. Judge Caracappa concluded that those ineffective assistance of counsel claims are procedurally defaulted and that this default could not be excused for "cause" under *Martinez v. Ryan*, 566 U.S. 1 (2012). R. & R. 13, 19–20, 22–23, 25–27, 29, 32. In *Martinez*, the Supreme Court held that counsel's failure to raise an ineffective assistance of trial counsel claim on collateral review is "cause" to excuse a procedural default where (1) the failure of collateral attack counsel to raise the claim constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 695 (1984); and (2) the underlying ineffective assistance of trial counsel claim is "substantial." *Martinez v. Ryan*, 566 U.S. at 14. In his objections, petitioner acknowledges that his claims are procedurally defaulted but argues that there is "cause" for excusing the default under *Martinez*, because his ineffective assistance of counsel claims are "substantial." *See* Pet. Objs. 1, 2, 4.

3

*Strickland v. Washington* sets forth the standard for ineffective assistance of counsel claims. 466 U.S. 668, 686 (1984). Under *Strickland*, a criminal defendant must show (1) that counsel's performance was "deficient," falling "below an objective standard of reasonableness" and (2) that counsel's deficient performance prejudiced his clients, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694. In other words, counsel's actions must fall outside "the wide range of professionally competent assistance." *Id.* at 690. Counsel cannot be ineffective for declining to raise a meritless issue. *See Premo v. Moore*, 562 U.S. 115, 124 (2011); *Thomas v. Horn*, 570 F.3d 105, 121 n.7 (3d Cir. 2009) (concluding counsel was not ineffective for failing to object where there was no basis for the objection). Furthermore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Petitioner argues that his post-conviction collateral attack counsel was ineffective for failing to argue that trial counsel provided ineffective assistance by (1) failing to object to the admission of an eye-witness's prior testimony, (2) retaining three different jurors without consulting petitioner, (3) failing to request a jury instruction under *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954), and (4) failing to object to the introduction of prejudicial crime scene photos. *See* Pet. Objs. 1–4. For the reasons that follow, the Court concludes that petitioner's underlying ineffective assistance of trial counsel claims are not "substantial," and that, as a consequence, his claims are procedurally defaulted. For that reason, the Court overrules petitioner's objections.

### *A. Introduction of Eye Witness's Prior Testimony*

Petitioner claims trial counsel was ineffective for failing to object to the admission of Angelic Kirkman Smith's prior testimony identifying petitioner as the shooter because the Commonwealth failed to confirm she was "unavailable" during the second trial. Pet. Objs. 1. Ms. Smith was a bystander to the shooting and one of the victim's neighbors. R. & R. 2. At petitioner's first trial, which resulted in a hung jury, Ms. Smith identified petitioner as the shooter. *Id.* at 2, 10. She testified that she saw the murder "from the sidewalk approximately three houses down from where the murder occurred." *Id.* at 2. Her testimony was subject to cross examination. *Id.* at 18. At the second trial, the Commonwealth requested that the jury be informed that Ms. Smith was unavailable to testify again, stating that "the Court staff called over; . . . Ms. Kirkman Smith is, in fact, I believe, at Temple Hospital." *Id.* at 19. The trial court concluded she was unavailable, and her prior testimony identifying petitioner was then admitted pursuant to Pa.R.E. 804(b)(1) and *Commonwealth v. Bazemore*, 614 A.2d 684, 687 (Pa. 1992) (holding former testimony is admissible against the defendant if the defendant had a "full and fair" opportunity to examine the witness). R. & R. 19.

Reviewing the record, Judge Caracappa concluded that the trial court "confirmed that Ms. Smith was hospitalized and unavailable." *Id.* at 19–20. Objecting, petitioner argues that the record does not "confirm" that Ms. Smith was hospitalized and that the Commonwealth failed to make a "good-faith effort" to obtain her presence. Pet. Objs. 1. Petitioner contends that had trial counsel objected, the Commonwealth would have had to prove Ms. Smith was hospitalized, which they would have been unable to do, and her testimony would have been excluded. *Id.* Petitioner requests that the Court appoint an investigator to determine whether Ms. Smith was hospitalized. *Id.* at 2.

Petitioner's argument fails on both prongs of the *Strickland* standard. First, the Court concludes that it was not unreasonable for trial counsel not to object to the introduction of Ms. Smith's prior testimony in view of the Commonwealth's statement that the Court staff called to confirm that Ms. Smith was hospitalized and were satisfied with the response. Counsel cannot be ineffective for failing to raise a baseless objection. *See Premo*, 562 U.S. at 124. Second, petitioner has not shown that if counsel *had* objected to the introduction of Ms. Smith's prior testimony, and the testimony was excluded, the result of the proceeding would have been different because two other eye witnesses also provided testimony identifying petitioner as one of the shooters. Under these circumstances, the Court cannot conclude that without Ms. Smith's testimony, petitioner would not have been convicted. Thus, petitioner's underlying ineffective assistance of trial counsel argument regarding Ms. Smith's prior testimony is not "substantial" and is procedurally defaulted.

### B. Retention of Jurors

Petitioner asserts trial counsel was ineffective for retaining three of the jurors "without consulting petitioner." Pet. Objs. 2. Specifically, petitioner argues that (1) Juror No. 10 should not have been retained without consulting petitioner, because her voir dire testimony showed she could not be impartial; (2) Juror No. 5 was sleeping and distracting other jurors; and (3) Juror No. 12 failed to disclose on his juror questionnaire that he had been arrested nine times. *Id.* at 2–3. Trial counsel did not object to the retention of any of these jurors, nor did he consult with petitioner before making this decision. *Id.* at 3. Petitioner argues that had he been consulted, he would have requested the jurors be "peremptorily struck." *Id.* at 3.

Petitioner fails to allege how their retention prejudiced his case. *See Montgomery v. Folino*, No. 10-2157, 2011 WL 2411042, at *12 (E.D. Pa. May 25, 2011) (denying petitioner's

claim where he failed to show that he was prejudiced by the replacement of one juror with another juror).  First, Juror No. 10 did not state she could not be impartial or that she had any particular bias—she merely stated that her fiancé would be standing trial for a DUI in the same courthouse ten days later and that she would be unable to put that stress out of her mind.  R. & R. 21.  Based on these answers, the trial court concluded Juror No. 10 was only attempting to escape jury duty.  *Id.*  Second, during the trial, Juror No. 11 complained to the court that Juror No. 5 was sleeping, slapping herself, and talking out loud.  *Id.* at 25.  The Court told Juror No. 5 to refrain from that behavior, and Juror No. 5 agreed.  *Id.* at 24–25.  Petitioner does not allege any additional facts as to how Juror No. 5's initial behavior prejudiced his case.  Finally, although Juror No. 12 failed to disclose his nine previous arrests, the Commonwealth explained that none of the arrests rendered Juror No. 12 ineligible for jury service.  *Id.* at 25–26.  Petitioner again did not make any further argument about how Juror No. 12 prejudiced petitioner's trial, leading to his conviction.

Petitioner argues that these three jurors were prejudicial to his case because they involved "structural error, where prejudice is presumed."  Pet. Objs. 3.  In support, petitioner cites Justice Stevens's concurrence in *Rose v. Clark*, in which he states that the violation of certain constitutional rights, such as racial discrimination in the selection of grand juries, is intolerable even if it had no practical impact on the trial or its outcome.  *Id.*; *see Rose v. Clark*, 478 U.S. 570, 587 (1986) (Stevens, J., concurring).  But *Rose* is distinguishable—retention of the three jurors that petitioner identified does not constitute the same type of error as racial discrimination in jury selection.  This argument regarding prejudice thus fails.

Petitioner argues that he was entitled to be consulted with respect to his trial counsel's decision making under the Sixth Amendment.  Pet. Objs. 3.  "An attorney undoubtedly has a

duty to consult with the client regarding important decisions, including questions of overarching defense strategy," but this obligation "does not require counsel to obtain the defendant's consent to every tactical decision." *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotations omitted). Indeed, while a client must be consulted with respect to some decisions, "the lawyer has—and must have—full authority to manage the conduct of the trial." *See Taylor v. Illinois*, 484 U.S. 400, 418 & n.24 (1988) (providing examples of when the duty to consult applies, including how defendant will plead and whether to relinquish the right to a jury trial). The Court concludes that the duty to consult does not extend to the retention of these three jurors, all of whom were appropriately retained by the court.

Furthermore, assuming *arguendo* that trial counsel had a duty to consult with petitioner on jury selection, petitioner would still be required to establish prejudice under *Strickland*, which he has failed to do. In short, petitioner has presented no evidence of prejudice stemming from the seating of the three jurors.

Because petitioner has failed to show prejudice, his argument that trial counsel was ineffective for failing to consult with him fails. Thus, this claim is not "substantial" and is procedurally defaulted.

### C. *Jury Instruction under* Kloiber

Petitioner argues trial counsel was ineffective for failing to request a *Kloiber* jury instruction. Pet. Objs. 4. A *Kloiber* charge instructs a jury that an eyewitness's identification "should be viewed with caution where the eyewitness (i) did not have an opportunity to clearly view the defendant; (ii) equivocated on the identification of the defendant; or (iii) had a problem making an identification in the past." *Commonwealth v. Rollins*, 738 A.2d 435, 448 n.14 (Pa. 1999) (discussing *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954)). A *Kloiber* instruction is

unnecessary where "the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified." *Kloiber*, 106 A.2d at 826.

Three eyewitnesses testified at petitioner's trial. *See* R. & R. 1–2. Petitioner argues each eyewitness's testimony warranted a *Kloiber* instruction and that trial counsel's failure to request such an instruction renders was ineffective. Pet. Objs. 4. For the reasons that follow, the Court concludes this argument fails with respect to each of the three eye witnesses.

   i. <u>Angelic Kirkman Smith</u>

As stated above, Ms. Smith was a bystander who witnessed the shooting. R. & R. 2. Ms. Smith testified that she knew petitioner and identified him as the shooter. *Id.* at 27. Petitioner, however, argues that a private investigator hired by the defense testified that the lighting and visibility conditions at the crime scene would have made it difficult for Ms. Smith to identify petitioner. Pet. Objs. 4. "[W]here there is evidence of record upon which a jury could find that the opportunity for positive identification was not good, a defendant is entitled to a *Kloiber* instruction." *Commonwealth v. McKnight*, 453 A.2d 1, 3 (Pa. Super. Ct. 1982). However, a *Kloiber* charge is not mandatory "[w]here an eyewitness has had protracted and unobstructed views of the defendant and consistently identified the defendant throughout the investigation and at trial." *Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010) (internal citations omitted).

Despite the investigator's testimony about visibility conditions at the crime scene, Ms. Smith's identification of petitioner, whom she knew, was unequivocal and supported by her testimony that she was standing on the sidewalk, only about three houses away from the crime scene, during the commission of the crime. *See* R. & R. 2, 29; *compare Ali*, 10 A.3d at 302 (determining *Kloiber* instruction unnecessary, despite argument that the lighting was poor at the

time of the murder and that the witness was not well-positioned to see what happened, where witness was unequivocal in her identification of defendant, whom she knew) *with Commonwealth v. Simmons*, 647 A.2d 568, 570 (Pa. Super. Ct. 1994) (determining *Kloiber* instruction necessary where testimony at trial revealed that the scene of the crime "could not be seen at all" from the location where witness claimed he was standing during the crime).

A *Kloiber* instruction was thus unnecessary. Because petitioner's ineffective assistance of trial counsel claim for failure to request a *Kloiber* instruction regarding Ms. Smith fails, this claim is not "substantial" and is therefore procedurally defaulted.

ii. Ronnie Jackson

Ronnie Jackson was a passenger in the victim's car with the victim during the shooting and was shot in the leg. R. & R. 2. At trial, he testified that he ducked when the shooting happened. *Id.* at 28. However, he also testified that, after ducking, he looked up and saw petitioner, whom he knew, shooting into the car at the victim, and that he had no problem seeing petitioner. *Id.* Mr. Jackson did not initially identify petitioner to the police when he was first questioned, but he testified at trial that this was because he worried for the safety of his family, who lived close to petitioner. *Id.* Petitioner argues that Mr. Jackson's testimony required a *Kloiber* instruction both because he testified that he ducked during the shooting and because he did not initially identify petitioner to the police. Pet. Objs. 4.

First, Mr. Jackson's testimony that he ducked during the shooting is irrelevant, because he also testified that after he ducked, he looked up and saw petitioner. R. & R. 28. That he ducked at one point does not show he did not have an opportunity to "clearly view" petitioner. Second, that Mr. Jackson did not initially identify petitioner is likewise insufficient to necessitate a *Kloiber* instruction. Nothing in the record before the Court shows that Mr. Jackson ever

"equivocated on the identification of the defendant" or "had a problem making an identification in the past." The trial court explained that Mr. Jackson "was interviewed twice by homicide detectives. During his second interview with homicide detectives, . . . [he] identified [petitioner] as one of the two shooters." *Id.* at 2. The record reflects that Mr. Jackson's identification was unequivocal—in fact, at trial Mr. Jackson testified that he was "absolutely certain" that he saw petitioner shooting at him that night. *See id.* at 9.

Mr. Jackson's unwillingness to identify petitioner in his first interview with the homicide detectives, to protect the safety of his family, does not render his identification equivocal and is insufficient to warrant a *Kloiber* instruction. *See Commonwealth v. Reid*, 99 A.3d 470, 491 (Pa. 2014) (determining no *Kloiber* instruction necessary where witness's failure to identify defendant from a photo array was "not based on his inability to do so, but, rather, his unwillingness" to do so); *Commonwealth v. Lee*, 585 A.2d 1084, 1087 (Pa. Super. Ct. 1991) (concluding "the initial fear of the witness to tell the police what she saw cannot be equated with a prior failure to make an identification" under *Kloiber*). Thus, Mr. Jackson's testimony did not require a *Kloiber* instruction, and trial counsel was not ineffective for failing to request such a charge. This argument is procedurally defaulted.

iii. <u>Rodney Smith</u>

Rodney Smith was a passenger in the car during the shooting and was grazed by a bullet during the incident. R. & R. 2. The day after the shooting, Mr. Smith identified petitioner as the shooter to the police and signed a written statement. *Id.* at 2, 28. However, at trial, Mr. Smith testified that he did not see the shooter, because his head was tucked into his lap, and asserted that never told the police he saw or recognized either shooter. *Id.* at 2. Following that testimony, the Commonwealth offered in evidence Mr. Smith's prior signed statement in which he

identified petitioner, and it was admitted in evidence. *Id.* at 9, 28. Defense counsel did not object to introduction of the prior statement.

Petitioner argues that Mr. Smith did not identify petitioner at trial and, as a consequence, he was entitled to a *Kloiber* instruction. *See id.* at 10; Pet. Objs. 4. In *Kloiber*, the Pennsylvania Supreme Court concluded that no jury instruction to view the testimony with caution was necessary where a witness's "identification is not weakened by prior failure to identify." *See Kloiber*, 106 A.2d at 826. In other words, *Kloiber* does not address circumstances in which a *prior* identification was positive, admissible evidence, but the witness refused to provide an *in-court* identification. *See Commonwealth v. Sanders*, 42 A.3d 325, 334–35 (Pa. Super. Ct. 2012) (concluding a trial court did not abuse its discretion in failing to give a *Kloiber* instruction where a *prior* identification was unequivocal but the witness refused to give an in-court identification). Mr. Smith's initial, unequivocal identification of petitioner to the police in a signed statement, which was admitted into evidence, thus does not warrant a *Kloiber* instruction.

Furthermore, assuming *arguendo* that Mr. Smith's in-court recantation of his prior signed statement required a *Kloiber* instruction, petitioner's argument would still fail, because he did not show, under *Strickland*, that had trial counsel requested a *Kloiber* instruction for Mr. Smith's testimony, the outcome of the case would have been different. Unlike other cases where courts have found failure to request a *Kloiber* instruction prejudicial, in this case, Mr. Smith's testimony was not the only evidence connecting the defendant to the case—two other eyewitnesses, including a second witness who was in the car with the victim, identified petitioner as the shooter. *See Simmons*, 647 A.2d at 570 (holding failure to request *Kloiber* instruction was "clearly prejudicial" where the witness was "the only witness who tied the defendant to the scene"). For these reasons, petitioner's claim is not substantial and is procedurally defaulted.

### D. Introduction of Crime Scene Photographs

Petitioner argues trial counsel was ineffective for failing to object to the introduction of photographs of the victim's wounds, for which petitioner argues "prejudice outweighed the probative value." R. & R. 30. Petitioner contends that the photos were not necessary to support the testimony at trial where the defense did not contest the cause and manner of the victim's death, and that trial counsel should have objected to the photos' prejudicial nature. *See id.* at 30; Pet. Objs. 4–5.

"A gruesome or potentially inflammatory photograph is admissible if it is of 'such essential evidentiary value that [its] need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.'" *Commonwealth v. Garcia*, 479 A.2d 473, 478 (Pa. 1984) (quoting *Commonwealth v. McCutchen*, 454 A.2d 547, 549 (Pa. 1982)). However, "[t]here is no need to so overextend an attempt to sanitize the evidence of the condition of the [victim's] body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt." *McCutchen*, 454 A.2d at 549. Victim photographs can, for example, prove helpful in determining the assailant's intent. *Commonwealth v. Jacobs*, 639 A.2d 786, 789 (Pa. 1994). Furthermore, "even where the body's condition can be described through [alternative] testimony . . . , such testimony does not obviate the admissibility of the photographs." *Id.*

The Court concludes petitioner's argument that the photos were unfairly prejudicial is meritless. Photographs of the victim's wounds were relevant to proving petitioner's specific intent to kill and supported testimony provided at trial.[2] Petitioner has provided no support for his position that the photographs were "so gruesome as to have precluded the jury from returning

---

[2] As Judge Caracappa stated, the photos supported testimony given at trial about "the positioning of the victim within the vehicle, the amount of shots that were fired at the victim, the positioning of the shooters, the proximity of the shooters to the victim, and that petitioner was aiming for the victim's head." R. & R. 31–32.

a fair and true verdict." *See Commonwealth v. Reed*, 583 A.2d 459, 466 (Pa. Super. Ct. 1990) (concluding photos and slides of victim's wounds were "relevant to support the inference of a specific intent to kill"). Because trial counsel cannot be ineffective for failing to make a baseless objection, petitioner's ineffective assistance of trial counsel argument is not substantial and is procedurally defaulted. *See Premo*, 562 U.S. at 124.

## IV. CONCLUSION

For the foregoing reasons, the Court approves and adopts the Report and Recommendation of Judge Caracappa, overrules petitioner's Objections to the Report and Recommendation, and dismisses and denies petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus. An appropriate Order follows.